Ina Lipkin representing the petitioner, Baldeep Singh Handal v. Alberto Gonzales. This is a case from the Board of Immigration Appeals which affirmed the decision of the I.I.J., the immigration judge, denying the petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture. The petitioner argues that the I.I.J. and the B.I.A. improperly denied his cases on various grounds. One of the main reasons that the I.I.J. denied the case was based on a complete misstatement and mischaracterization of the facts and the evidence in the record. Namely, she asserted that Respondent never testified he was a member of a political group, that he was only affiliated with a political group, and the Board of Appeals compounded the error by pretty much repeating what the I.I.J. had said. But a thorough look at the record shows that the Respondent indeed testified he was a member of the political group known as the Sheremani Akali Dalman, that he submitted Exhibit 2A, a letter of membership to this group, that he testified with some detail regarding the hierarchical structure of the group, his activities with the group, and, more importantly, the arrests he endured as a result of his political activities with the group. Despite all of that testimony and the documentary evidence, which was never refuted, never questioned, the authenticity of Exhibit 2A, never sent for forensic or any other kind of analysis. In fact, the I.I.J. completely ignored that document, didn't mention it at all. Despite all of those facts and the evidence, the I.I.J. stated that this — I call him Respondent because in the lower court that's what he's referred to, but that the petitioner failed to establish a nexus of persecution on these so-called five grounds. Right. How about the credibility finding? It was an adverse credibility finding by the I.I.J. It's interesting, Your Honor, because she clearly states he was consistent. Clearly states what? That he was consistent. But then she starts to put small holes in that finding of consistency, saying, well, you know, I didn't like his demeanor. He didn't show any emotion. And he made a couple mistakes in dates, even though he corrected himself on direct without prompting when he just misspoke. There was another instance where he incorrectly stated the leader of the party. Then he himself corrected his mistake and gave the correct name of the party. This was not an attempt to rehabilitate his testimony. He himself corrected it. But she never really could point to one incredible aspect of his testimony. Again, finding he was consistent. And as I stated in my new citations, finding that his demeanor was unemotional without specifically looking into the record and stating what about his demeanor she found incredible or inappropriate, that kind of finding is inappropriate in this circuit. Because had she specifically stated, for example, when he was reciting his arrest, he had a blank expression. Let's say she stated that. Then I think that her incredibility finding would have some sort of basis. But she didn't do that. So under the precedent of this court, I don't think that simply stating he's incredible without giving a supporting basis as to that finding holds water. So let me ask you a few procedural questions. Assuming, and I don't know about this, but assuming we would agree with you that the IJ's credibility finding was not supported by substantial evidence, if you take his testimony as true, then it's your position that he satisfied the other requirements, that is he suffered persecution, past persecution, on account of one of the protected grounds, political activity. I do. Therefore, he's entitled to the presumption of future persecution. And there was some evidence about changed country conditions, if I'm not mistaken. So what do we do with that? Let me first state that, yes, I do believe he established past persecution. If you look cumulatively at all the five arrests, the other incidents of harm, the burning of his crops, et cetera, I think that clearly amounts to past persecution. And it's true, the government can rebut with a showing of changed country conditions. But here the IJ only made a very generalized statement regarding the conditions, stating everything's improved since then. She didn't pick through the Department of State report to find that for Sikhs, such as this petitioner, with the history of problems that he experienced in the area in which he resides, would be safe if he returned. She didn't mention any of his numerous background submissions either. And although the Board of Appeals quoted one sentence out of one page of the Department of State report, again, that was a very generalized statement that they quoted, and I think that's insufficient to find that country conditions have changed. And under Zhang v. Gonzalez, the court has found that even if certain incidents of harm are not mentioned in the report, you can't extrapolate from that to find the conditions have improved, let this guy go home and live safely. So I don't think there was enough in this record to find that conditions have improved, he can return and live safely. Are you saying, in other words, that no matter how much attention the IJ paid to that country condition report, she wouldn't be able to meet the test that our case law has laid down for specificity? No. I think that if she had thoroughly looked at it and found something there that specifically would have supported her position, that country conditions have improved to the extent that he could return and live safely, then she might have well-crafted a argument to sustain her position. But she didn't do that, and she didn't make any mention regarding his documentary evidence and what she deemed consistent and, I argue, credible testimony. Did the police continue to look for him? If she had weighed all of those factors, she might have come up with a different conclusion than the generalized conclusion that she did make. And I think based on the fact that she mischaracterized the evidence regarding his political membership and very generally mentioned his demeanor, I think that her general reference to the Department of State report should not be given weight because she didn't analyze thoroughly the other grounds for the denial. What do we do with your CAT claim and withholding claim? Well, as you know, those are higher standards and burdens of proof to meet. And I think that should the court found that he had sustained his burden and established past persecution, this court does not even need to look at those claims. But if the court finds that for some reason he didn't meet his burden, as we argued in the brief in the alternative, all the acts of persecution which he suffered, at least cumulatively if not individually, still establish past persecution, but more importantly establish that if he returned, because of that history that he experienced, he would still have a high probability, even of a 10% chance under case law, of suffering some sort of harm, then he would be eligible for that. And I think the background materials, I'll state very briefly so I can leave some time for rebuttal, indicate that the police act with impunity, especially in the sense that they've not been tried for all the acts of harm against Sikhs during the relevant time periods regarding the events that the petitioner had testified to. And without punishment, there is no fear for them to be punished in the future and therefore no motivation for them not to seek him out and not only harm him, but again, force him to pay bribes, et cetera. Counsel, the IJ seemed to think that petitioner's problems were motivated by several different things. What do we do with that? Do we just ignore it and say, well, if he's got one or two, that suffices? If he's got one or two incidents that have to do with political opinion, for example, do we just ignore the rest of it? I think in this particular case you don't have to ignore it because I think all the underlying basis for persecution are those that are part of that nexus I earlier mentioned. Well, that's your argument, but the IJ found otherwise, and it seems to me there is support for some of the findings that some of these things were not motivated by political opinion but by his disagreement with police over a claim and that sort of thing. Is it your position there's no support in the record for those findings? I feel that because the petitioner was accused of anti-governmental activities during all five of the arrests, even if he didn't hold a political opinion, even if they didn't arrest him because he's a whistleblower, as he claims, the fact that they accused him of being a Khalistani, the fact that they accused him of participation in political rallies, the fact that they did that just even one time, although they did it all five times, it was a sufficient basis to find out. Those findings, though, were based on his testimony, as I understand it. So how would you have us ignore them while finding him credible? I'm not sure I understand, Your Honor. I believe that the finding as to the reason why he was a victim of this and that sort of conduct was in some cases based on petitioner's testimony, things unrelated to political opinion. What would you have us do with those findings? That's my question. Well, even though the petitioner might have at times stated that he was not sure why he was arrested or whether it was in that third arrest, I believe there was some question in I.J.'s mind, was he arrested simply in retaliation for complaining and thereby establishing a whistleblower defense, or was it because it was a personal vendetta, you know, against the police for burning his crops? Even if this Court finds it was a personal vendetta and wasn't part of a whistleblowing defense, the fact that a bribe was required for his release, the fact that he was brutally beaten without the benefit of any sort of judicial protections is itself sufficient basis to establish persecution, even if you don't find it was on an imputed ground. But because he had five arrests and several of those clearly established that they were tied to his political activities, not even just an imputed political opinion, that alone is enough to establish past persecution in this case. Thank you. We'll – I'll let you have a minute. Edward Rebano. Good morning, Your Honors. May it please the Court, I'm Quinn Bain for the respondent. Could you just keep your voice up a little bit? Sure, Your Honor. I'm Quinn Bain for the respondent, Attorney General Alberto Gonzalez. The question presented in this case is not whether you could believe the petitioner, but whether the evidence in the record compels the conclusion that he was telling the truth. Because the immigration judges and the Board of Immigration Appeals' credibility findings affected how they adjudicated the petitioner's asylum claim and his other claims for relief, I'd like to focus on the credibility determinations and discuss how each of the immigration judges and the Board's credibility determinations regarding petitioner's credibility is grounded in the record. It should be noted that the immigration judge in this case based her credibility determination on both the petitioner's testimony and his demeanor. Regarding his testimony, she found that it contained significant inconsistencies that went to the heart of his asylum claim. Contrary to counsel's contention, the immigration judge did not find that his testimony was consistent. I'd like to call the Court's attention to page 49 of the administrative record. The first paragraph under the analysis of facts and law heading, the immigration judge found, quote, although the basic information is consistent, the respondent is not a credible witness due to his demeanor, his movements, and a lack of corroborating evidence. Therefore, the record in the immigration judge's decision itself shows that there was no finding on the part of the immigration judge that his testimony was consistent. To the contrary, she found that his testimony was not consistent. She found that most significantly that he was not credible because he testified during the course of the hearing that he did not know why the police in his province were interested in him. And that statement did not come at the beginning of his testimony, but rather came at the very end of his testimony after he had testified about his alleged political activities on behalf of the Iqalit al-Aman party, as well as the five arrests and beatings that he allegedly experienced at the hands of the police and also to the crop burning by the police. So it is significant that he testified at the end of all that, that he really did not know why the police were interested in him. So what was there he was supposed to say? They, the police, I know that the police were after me because of my political activity. How can he testify as to what the police were thinking? Well, he may not be able to do that, Your Honor, but the law of the Ninth Circuit and the Supreme Court places the burden on the petitioner to articulate that his alleged persecution was on account of one of the five grounds in the statute. In this case, he alleged in his asylum application that he was persecuted on the basis of his religion, of his membership in a social group, and on the basis of his political opinion. Right. But yet he never articulated precisely why it is that he believed that he was being persecuted or targeted by the police on account of his political opinion. And that precisely goes to the question. You wanted him to testify as to what he, to tell us what he thought the police believed about him. He could have testified as to his belief as to why the police were interested in him, but he didn't do that. All he said was he did not know why the police were interested in him. Well, how about he testified to his interactions with them, his beatings and whatnot? Your Honor, the record. And the circumstances which gave rise to them. Why doesn't that support his claim that he was, they were after him because of his political activity? Substantial evidence in the record supports the immigration judges and the Board's findings that his arrests were not connected in any way to his political activities. In fact, the petitioner testified that he was not arrested at the Akali Dauman party rallies that he attended, but long afterwards at the store where he worked or at his home. But he was never arrested at the rallies. The dates of his arrests were also inconsistent. And at one point during the hearing at record page 77 to 78, he admitted that the arrests had nothing to do with the rallies. And so that called into question whether or not his attendance at the rallies had anything to do with his political views. He did testify to a couple of statements that police made about Khalistan. Yes. I believe that there was one point in the hearing when the petitioner testified that the police called him a Khalistan dog, and that was, I believe, after his second arrest. I note that that arrest took place at his store, and he was never able to provide an explanation as to why he was arrested on that occasion. He speculated that perhaps the arrest had something to do with the fact that the Akali Dauman party's leaders had attended, I'm sorry, had visited his store, and that somehow may have led the police to believe that he was politically involved with that party. But the weight of the evidence suggests that that arrest and all the other arrests had nothing to do with his political involvement with the party. For instance, he was not a party member. His political views were never expressed or articulated to the police or at any time during his attendance at the rallies. And his arrest came after he attended a nuclear demonstration, which had nothing to do with his membership in the party. And furthermore, and most significantly, he did not complain about the arrests that he allegedly experienced. He only complained about the crop burning that occurred after he had attended some of the rallies, and the crop burning occurred in 1998, I believe. Therefore, there was so, the connection, if any, between his political activities and the arrests and beatings that he said took place is so tenuous that the immigration judge was well within her right to find that he was not credible, and that even if he was credible, that his activities did not evince involvement or did not lead to the conclusion that he was persecuted on account of his political opinion. I'd like to... I thought there was testimony that while he was being beaten, the police said things to him that suggested it was because of his political activity. Did I, do I misunderstand the record in that regard? No, you did not, Your Honor. There was one instance during which the police, while allegedly beating the petitioner, called him a callous damn dog. But that sole fact by itself does not overcome the weight of the evidence which suggests that the police were not interested in him for his political opinions, and that the police were not looking to persecute him because of his attendance at the rallies or because he supported the Akali Dauman party. In fact, the immigration judge found that this case is all about police corruption and that all the mistreatment that the petitioner claims happened to him in India was the result of the police targeting him solely because he filed a complaint against them. And the complaint was, it appeared to be some kind of a civil lawsuit to seek compensation for the destruction of his crops. And that complaint significantly, the only time that he ever complained about police mistreatment was after the crop burning and not after the arrest. I'd like to quickly address the point that Judge Cox made during counsel's presentation, which is what happens if the court finds that there was a change in country conditions. I'd like to address counsel's point on that. In this case, the immigration judge did make an individualized determination of how the change in country conditions will affect the petitioner should he be returned to India. She found that there was no evidence that he would likely be harmed if he were to be returned to India. That analysis is made at page 50 of the administrative record. So she did make an individualized analysis. I will admit that it wasn't the clearest analysis or the most detailed or comprehensive, but she did make the analysis, and she also did consider his testimony as well as the documentary evidence that he submitted in support of his asylum application. I'd like to read that part of the opinion to the court. On page 50, she said, however, the respondent's testimony has been considered along with form I-589, which is his asylum application, and the material submitted by the respondent. And this court finds that his unwillingness to return does not stem from the likelihood that he would be persecuted on account of one of the five enumerated grounds for the grant of asylum. And finally, Judge Cox also asked a question about mixed motive. We don't believe that this is a mixed motive case because there's no evidence of politically motivated persecution here. The record suggests that there were other reasons that the police in his province targeted the petitioner, but those reasons were not related to his political opinion. I see that my time is almost up. And if the court has no questions about the petitioner's other claims, his merits claims, I'd like to rely on the government's brief to address the claims. Thank you very much. Counsel, I thought you could have a minute of rebuttal. The record clearly shows that on page 49, one of the first things Judge Ho finds in her analysis is, quote, although the basic information is consistent, unquote, and then she goes on and on. So the petitioner correctly quoted from her opinion that she did find him consistent and the other grounds that she found inconsistent were not sufficient basis or did not go to the heart of the claim. As is stated on pages 6 and 7 of the petitioner's brief, he testified to each of his five arrests to instances where the police specifically pointed out their dislike of his political activities or the political activities they imputed onto him. Specifically, on page 79, during the second arrest in 92, the police made accusations against him after learning he attended political rallies where he supported and advocated for Palestine. On page 85, after his third arrest, the police threatened to teach him a lesson. After learning he had filed a case against them, which clearly shows a basis for a whistleblowing defense, that the time is over your time now. And last, I just want to say one quick thing about country conditions. On page 49, the very last sentence, the judge just makes one statement about country conditions. She doesn't make any kind of analysis with this one. There's a little more in the board's opinion. There is, and they quote one sentence, half a sentence, Your Honor, which, again, is a very generalized statement. Page 2 of the record. Page 3 of the record, I think. That would be page 4 of the record, that second paragraph. The only thing that the board came up with is, quote, In Punjab, the pattern of disappearances prevalent in the early 90s appears to have ended. That in no way has any of the things responded testified to. Thank you. The matter will be submitted.
judges: Canby, Cox , Paez